WOLF, J.,
dissenting.
Appellant Marlena Woods raises two issues concerning the trial court’s determination pursuant to section 775.082(10), Florida Statutes, that sentencing appellant *822 to a nonstate prison sanction could present a danger to the public. She asserts that 1) the statute allowing a judge rather than a jury to make this “danger to the public" finding is unconstitutional; and 2) the trial judge made insufficient findings, and.the record does not support, the finding that- a nonstate prison sanction could present a danger to the public, I would not reach the constitutional question because I agree that the trial court’s order is deficient, and the State presented insufficient evidence to meet its burden of proof under the statute. See Reed v. State, 192 So.3d 641 (Fla. 2d DCA 2016); Murphy v. State, 161 So.3d 1282, 1284 (Fla. 1st DCA 2015); Jones v. State, 71 So.3d 173 (Fla. 1st DCA 2011). I would remand for resentencing to a non-state prison sanction pursuant to Jones.
I. Facts
The only evidence presented to the trial court was that appellant stole food from Walm'art, and she had prior convictions close in time to the underlying offense. No evidence was presented concerning the specific facts surrounding the conviction in the instant case or concerning appellant’s prior convictions. The trial judge did not determine or provide an explanation as to why 18 months in prison rather than 1 year in jail would better deter appellant from committing crimes in the future. The court also did not identify the specific danger from which the public was being protected by the court sentencing appellant to prison. This court’s opinion in Jones, 71 So.3d 173, requires such evidence and determinations.
Appellant entered a plea to felony petit theft. The State and the defense stipulated that the factual basis for the plea was based on affidavits contained in the filé. The police arrest affidavit, the only one contained in the file, indicated that appellant was arrested for shoplifting food at Walmart. The .value of the stolen items was $17.19. •
At sentencing, appellant testified that when she committed the theft, she and her four children were homeless and living in the woods, and she stole the food to feed her children and herself. Appellant testified that she was no longer homeless and was looking for a job. Appellant’s counsel argued that appellant scored only 8.3 points on her sentencing scoresheet, and thus under section 775.082(10),- she qualified for a recommended sentence not exceeding 12 months in county jail. Appellant’s counsel asked the-court to rely on Jones, 71 So.3d 173, to support its sentencing. appellant to jail rather than prison by finding that appellant was not a danger to the public.
The State argued that appellant was a danger to the public. The State recited appellant’s prior record, asserting that she was arrested for the instant theft less than a month after being released from jail, where she had served time for a previous theft. The State presented no other evidence.
The trial court found that appellant presented a danger to the public and sentenced her to 18 months in state prison. The trial court based its written determination on appellant’s prior convictions and the rapidity with which she committed her most recent theft after release from jail. The court went on to say, “The financial aspect of the case is significant, despite the fact the items were recovered.” There appears to be no evidentiary support for this conclusory statement made by the trial judge, nor did the trial judge explain why stealing food valued at $17.19 from Wal-mart that was ultimately recovered made the financial aspect of the case significant.
II. The Law
Section 775.082(10), Florida Statutes, states:-
*823 (10) If a defendant is sentenced for an offense committed on or after July 1, 2009, which is a third degree felony but not a forcible felony as defined in s. 776.08, and excluding any third degree felony violation under chapter 810, and if the total sentence points pursuant to s. 921.0024 are 22 points or fewer, the court must sentence the offender to non-state prison sanction. However, if the coiirt makes written findings that a nonstate ‘prison sanction could present a danger to the public, the court may sentence the offender to a state correctional facility ‘pwrsuant to this section.
(Emphasis added).
Appellant only had 8.3 points on her scoresheet, and her crime was not one defined as a forcible felony, nor did it constitute a violation of chapter 810, Florida Statutes. Therefore, the trial court’s departure had to be based on a written finding that a “nonstate prison Sanction could present a danger to the public.” § 775.082(10), Fla. Stat.
The statute specifically states that “the court must sentence the offender to a non-state prison sanction.” § 775.082(10), Fla. Stat. Departure is only authorized based on written findings that a nonstate prison sanction could pose a danger to the public. Thus, the State has the burden of proof, and the order of the trial court must make sufficient findings to justify a departure. Jones, 71 So.3d 173.
Both the State’s burden and the required findings by the trial court are based on the “clear purpose and obvious intent [of] section 775.082(10),” which was “to keep certain offenders out of the state prison system.” Id. at 175. Subsection (10) was enacted as part of a cost-saving measure intended to combat prison overcrowding by adopting a “‘prison diversion approach’ pursuant to which the trial court was required to ‘sentence certain non-violent low-scoring offenders to a non-state prison sanction unless the court finds that such a sentence could endanger the public.’” Id. at n.4 (quoting Fla. Comm, on Ways & Means, Bill Analysis & Fiscal Impact Statement for CS/SB 1722, at 1 (Apr. 6, 2009) (on file with comm.)). This approach was adopted based on research that concluded diversionary programs had “ ‘reduced offender recidivism and reduced prison populations’ ” with the goal of “ ‘improving] public safety by reducing crime through providing non-violent offenders with the tools to function successfully in the community) ” Id. (quoting Fla. Comm, on Ways & Means, Bill Analysis & Fiscal Impact Statement for CS/SB 1722, at 1).
In Jones, we addressed the sufficiency of the evidence to support a prison sentence pursuant to section 775.082(10). In that case, the defendant scored 8.2 points on his sentencing scoresheet and was convicted of driving while his license was can-celled, suspended, or revoked. Importantly, two of the trial court’s findings in Jones were:
1. Defendant has evinced an unwillingness to discontinue driving without a driver’s license, despite repeated punishment by the Courts;
[[Image here]]
4. Defendant’s unavailability to drive due to incarceration in State prison is the only method open to the Court for the protection of the public from Defendant’s irresponsible and dangerous bé-havior.
Id. at 174.
These findings are very similar to the ones made in the instant case that the only way to prevent future shoplifting based on appellant’s record was to place her in prison. In Jones we found such findings to be insufficient to support the imposition of a prison sentence. We specifically stated:
*824 Although Appellant’s history of driving without a license arguably supports the trial court’s finding that he will continue to do so, the court did not make sufficient findings and the record does not suggest that imprisonment within the state prison system rather than the county jail would better deter him from continued unlicensed driving. Nor is there any record support for the court’s implicit finding that one year of incarceration in the county jail would constitute a significantly lesser deterrent for Appellant than three years in state prison. The trial court’s additional findings are speculative at best because it does not appear from the record that Appellant has a history of vehicle accidents or engaging in high speed chases with law enforcement.
Id. at 176.
Several important concepts may be gleaned from Jones:
1. Repetitive convictions standing alone are insufficient to support imposition of a state prison sentence pursuant to the statute.
2. Speculative or conelusory statements not supported by the record will not support the imposition of state prison sentences.
3. The court must have evidence and explain how a prison sentence will be a greater deterrent to prevent the criminal behavior.
The instant case suffers from the same infirmities that existed in Jones.
In Reed v. State, 192 So.3d 641, 648 (Fla. 2d DCA 2016), and Ryerson v. State, 189 So.3d 1047, 1048 (Fla. 4th DCA 2016), our sister courts similarly struck down departure sentences pursuant to section 775.082(10) where the trial court’s findings did not establish a nexus between nonstate prison sanctions and the resulting danger to the public. Because the trial court’s findings here failed to establish that nexus, the findings were insufficient to support a prison sanction.
In addition, the Second District convincingly determined that “a sentencing court’s finding of an offender’s danger to the public must be more than the recitation of acts that are inherent to the crimes for which the defendant was convicted.” Reed, 192 So.3d at 647. As previously noted, the State in this case relied solely on appellant’s prior record without presenting any evidence concerning why a danger to the public was presented in this particular case.
There are only two cases in Florida holding economic crimes may be sufficient to justify a finding of danger to the public. See Porter v. State, 110 So.3d 962 (Fla. 4th DCA 2013); McCloud v. State, 55 So.3d 643 (Fla. 5th DCA 2011). I do not necessarily disagree with that conclusion, but the application of this rule to the petit theft in this case without any other specific facts surrounding this offense or appellant’s prior offenses is problematic.
In addition, neither Porter nor McCloud is binding on this court, and both are factually distinguishable. In McCloud, 55 So.3d 643, the Fifth District was dealing with convictions for felony petit theft—the same crime we are dealing with in this case.[15] McCloud is distinguishable, however, because the McCloud court gave a specific, detailed explanation concerning how the defendant’s behavior constituted a danger to society.[16] Id. at 644-45. In the *825 instant case, there is no such explanation in the order, nor is there any testimony to support such a finding.
In Porter, 110 So.3d 962, the other Florida case upholding a determination that the defendant posed a danger to the public based on financial crimes, the trial judge had the benefit of a full trial and evidence upon which he made a finding that “the financial and emotional damage in this case was significant.” The Porter court also determined that the underlying crime was consistent with the defendant’s lifelong modus operandi. Id. In the instant case, the facts do not support a finding of significant financial and emotional damage. The only facts on the record, stealing $17.19 worth of food from Walmart to feed appellant’s children, absent other evidence, do not demonstrate any type of significant financial impact. In addition, the State presented no facts concerning appellant’s previous crimes.
Further, the Fourth District, in a later decision, limited its holding in Porter, noting there still must be more than concluso-ry statements to establish the nexus between the nonstate prison sanction and the danger to society. Ryerson, 189 So.3d 1047.
Here, in finding a danger to the public, the trial court relied in part on the fact that appellant committed the underlying petit theft only a month after being released from incarceration for a prior petit theft conviction. Appellant’s history of committing petit theft might support a finding that appellant would continue to commit petit thefts. Jones, 71 So.3d at 176. However, as this court found in Jones, the likelihood of recidivism is not enough to justify a prison sanction under section 775.082(10). The State must prove, and the court must explain, how imprisonment rather than a nonstate prison sanction would better deter continued thefts. Stated differently, the court must explain how one year of incarceration in county jail would constitute significantly less of a deterrent than a prison sentence. Here, there was no evidence or findings that a year in jail would constitute a significantly lesser deterrent than an 18-month prison sentence, nor was there any evidence or findings made by the trial court demonstrating that the types of petit thefts committed by appellant constituted a danger to the public.
Based upon the lack of evidence to support the trial court’s finding that “the financial aspect of this case is significant,”, the lack of an explanation as to what harm society was being protected from, and the lack of an explanation as to how the sentence actually imposed would afford greater protection to the public than a nonstate prison sanction, this case must be reversed pursuant to Jones.

. The court found a habitual thief could present a danger to the public pursuant to the statute, a conclusion that I also do not necessarily disagree with based on the facts of that

. There was specific testimony regarding how the defendant’s behavior was acting as a drain on police resources.